Fletcher, Administrator *v.* Carter.

JOEL W. FLETCHER, Administrator *vs.* SUMNER L. CARTER.

A widow joined with all but one of her husband's heirs, in a bond to sell their respective interests in her husband's real estate at public auction, reserving to herself for her dower estate, according to the usual rates of allowance. The entire estate was bid off May 13, 1851, but no sufficient memorandum was made to bind either party, and the other heir had not then agreed to sell. On May 17, 1851, the widow died, not having executed any conveyance of her interest, and on the 9th of June following, all the heirs conveyed the entire estate to the highest bidder at said auction, and the deed was dated as of the auction sale. *Held,* that the widow's administrator had no claim to any portion of the purchase-money.

ACTION OF CONTRACT to recover the share of the plaintiff's intestate, Anna Carter, in the sales of the real estate of the late Nathaniel Carter, deceased. It was submitted to this court on facts agreed.

Nathaniel Carter, of Leominster, died intestate, leaving a widow, Anna Carter, seven children, and one grandchild, the daughter of a deceased son, Sylvia Ann Carter, a minor. The defendant, Sumner L. Carter, is the guardian of said minor.

On the first Tuesday in April, 1851, Sumner L. Carter, as guardian of Sylvia Ann Carter, was licensed by the probate court to sell the whole of the real estate of said minor; said real estate was advertised by said guardian, on the 12th day of April, 1851, and sold at public auction on the 13th day of May, 1851. There was appended to the advertisement of said guardian the following notice.

" At the same time, and rate, all the remaining heirs at law of the late Nathaniel Carter, deceased, will sell their respective rights in the above described real estate, and the widow will relinquish her right of dower, so that a full and perfect title will be given."

Before obtaining license, the defendant on the 3d day of March, 1851, obtained a bond from the widow and all the heirs at law, except Nathaniel Carter, to convey all their respective interests to the purchaser of his ward's share. The condition of this obligation was "that whereas the said Sumner L. Carter, in his capacity as guardian, as above named, is about to procure a license from the probate court to sell the interest of his said ward in the real estate of said Nathaniel, deceased, said sale to be made at public auction, we, the obligors above named, each for our-selves only, and only so far as our respective shares are concerned, agree with said Sumner L., as guardian, that we will each of us convey all our right, title, and interest in all the real estate of said Nathaniel, deceased, to whoever may be the purchaser of the share of said minor; upon the further condition that we shall receive the same proportion for our respective shares as said minor receives; said Anna however is to receive for her life estate in said real estate, whatever

may belong to her in accordance with the usual custom of calculating the value of life estates."

The whole of the real estate was sold at public auction on the 13th day of May, 1851. Nathaniel Carter, one heir, a resident of the State of Michigan, was not present at the sale. He did not sign the bond, but afterwards executed all the deeds with the other heirs. Anna Carter committed suicide on the 17th day of May, 1851.

The deeds were executed on the 9th day of June, but were dated May 13, the day of the auction, and the purchasers paid interest from that day, and the notes and mortgages which were given for the purchase-money, all had the same date. The gross amount of the sales was $5,774.08, and the share of said minor was $721.76. The conveyances were delivered at the house of the defendant, where a division and settlement was made by the heirs and guardian, and nothing was reserved for the share of the plaintiff's intestate in said estate.

At that time and place the gross amount of the sales of said real estate were divided into eight equal shares. The defendant received of the proceeds of said sales, only two shares, to wit: $721.76, in his own right, and a like sum as guardian of said minor, making together the sum of $1,443.52. The plaintiff was appointed administrator of the estate of Anna Carter, on the first Tuesday in June, 1851, and a demand was made on the defendant for the share of the plaintiff's intestate, in the sales of the real estate of said Nathaniel Carter, before the commencement of this suit.

It was agreed that if the court should be of opinion that the plaintiff is entitled to recover, the defendant is to be defaulted; the damages to be determined in such manner as the court shall decide, with costs for the plaintiff, otherwise the plaintiff to be nonsuit with costs for the defendant.

*E. Washburn,* for the plaintiff.

The widow's interest entered into the consideration for the bid, and so much as its relinquishment add'd to the amount of the bid, belongs to her representative, as her right was actually extinguished.

The rights of the parties are to be regarded as if everything had been done on the day of sale; the money paid was in pursuance of the bid, which embraced what never belonged to the defendant or the heirs.

The defendant, in what he did in making the contract of sale, so far as widow's dower was concerned, was her agent, and received the purchase-money accordingly.

The contract of sale was made in her lifetime, and being performed to the satisfaction of the purchaser, he having paid the money bid, the rights of the present parties are not affected by the statute of frauds. *Wilkinson* v. *Scott,* 17 Mass. 257; *Stone* v. *Dennison,* 13 Pick. 1.

The contract when executed by delivery of deeds, and payment of money, had relation to the 13th of May, and was not a new contract.

The law implied the promise to pay over this money when received; it is no objection that it grew out of a contract about real estate. *Bliss* v. *Thompson,* 4 Mass. 491; *Goodwin* v. *Gilbert,* 9 Mass. 514.

The contract on which the plaintiff relies, is not the bond between the heirs, but that indicated in the advertisement, and made with the purchaser at the time of sale.

If it be said that the widow did nothing to relinquish her dower, the answer is, she did what satisfied the purchasers to pay money for her, and the defendant has no right to retain it.

The plaintiff claims of the defendant the whole of the share of the purchase-money belonging to his intestate, as the defendant was her agent, and received the money to her use.

*P. C. Bacon & D. Foster,* for the defendant.

DEWEY, J. The plaintiff's intestate, Anna Carter, became a party to an agreement to sell all her right and interest in certain real estate of her late husband Nathaniel Carter, to such person, as might purchase at public auction the share of Sylvia Ann Carter, a minor, under the guardianship of the defendant. This contract was made with the defendant, describing him as the guardian of said Sylvia Ann Carter, and was upon the condition that said Anna should receive for her life estate in said real estate, whatever might be

the proper proportionate sum, calculating the value of her life estate.

This agreement by her has resulted in no action on her part, and no conveyance was ever made by her, nor was there any parting with her interest.

A proposal to purchase was made at a public auction on the 13th May, 1851, by an individual offering in the form of a bid, a certain sum therefor, but no written agreement was executed, and it is conceded that no legal obligation attached to any of the parties by reason of any thing done at that time, there having been no such formality of entry by the auctioneer of the terms of sale, and the name of the purchaser, as would take the case out of the operation of the statute of frauds. Four days after this informal contract of sale, and before any release or conveyance had been executed by Anna Carter, or any of the heirs, she died, having taken her own life.

It is quite obvious that she did not perform the act stipulated in the bond, as the consideration for her receiving her proper share of the proceeds of the sale. This claim cannot therefore be enforced by her administrator as a claim arising upon a specific performance of her contract. Had she, while living, executed a release of all her interest in the land to an actual purchaser, her administrator would have been entitled to enforce the payment of her proper share by those who had received the avails of the sale.

The counsel for the plaintiff asserts no claim founded upon any execution of a deed by her, of her interest in the land sold. The claim is of a different character. It is said that the dower estate of Mrs. Carter formed a part of the consideration for the offer or bid made on the 13th May, that this offer though not assuming the form of a valid contract at the time, yet at a later period was mutually carried into effect, the party making the offer receiving a good and sufficient title from the surviving heirs at law, and he on his part paying over the whole amount of his bid at the public auction, and that when the deeds were in fact executed, they had reference to the 13th May, and actually had that date, although really executed on the 9th June.

As it seems to us, the only valid contract by a purchaser was that of 9th June. The *ante* dating of the deed, as of 13th May, had no legal operation to make it take effect on that day. The date written in a deed is of no effect. It is the time of the actual execution, that fixes the rights under it. On the 9th June, a change of the interest of the heirs at law had occurred. Previous to the decease of Anna Carter, they held the land subject to her right of dower. After that event they held in themselves an unincumbered title. The purchaser from them took a conveyance of this latter interest, and one of the heirs, and a grantor in this deed had not, before the death of Anna Carter, agreed to make such conveyance. There was on 9th June no incumbrance of a widow's right of dower.

In looking at the bond of Anna Carter to convey her interest to any purchaser of the other shares, it will be seen, that it was not an obligation to convey at any particular time, but only that she should convey to such purchaser of the minor's share, upon condition that she was to receive her proportionate share for her right of dower.

During her lifetime no money was paid or tendered to her. Upon her death all her interest in the bond was gone. She had parted with nothing by any conveyance of hers, and no remaining interest of hers could have been conveyed by her administrator under any authority to carry into effect her contracts, inasmuch as her interest was personal, and terminated at her death. If she had united, as was originally proposed, with the heirs of her husband in a conveyance on the 13th May, or at any period before her death, she would have been entitled to her proper share of the avails of the sale from those who had received the same. Although her life estate would have been a brief estate, as the event proved, being only four days from the auction sale, yet her administrator might in the case supposed, have properly insisted upon the payment of the full sum that her life estate would have been valued at, on the 13th May. But in fact she never parted with her interest, or was required so to do by any sale, and the conveyance of

Fletcher, Administrator *v.* Carter.

June 9th was exclusively by the heirs of her husband, who then held the estate unencumbered by her right of dower.

The counsel for the plaintiff would avoid this view of the case, which is fatal to the maintenance of the action, by treating the sale as having been made on the 13th May. We know of no principle of law by which this sale of 9th June, and a conveyance executed at that date, can be thus treated as a sale made on 13th May. The whole matter of the sale was dependent upon the action of the heirs, and their grantee on the 9th June, and is to be thus considered.

Suppose Mrs. Carter had died on 12th May, the day before the auction sale, then as now, the bond would have been executed by her, but surely it would not be contended that any right would have accrued to her administrator, to demand a portion of the avails of a subsequent sale wholly made after her death. But it is equally true that her death on 17th May, was previous to any sale of the land, and must be attended with similar consequences.

The transaction on 13th May did not amount to a sale, first, because no person was bound by the offer, and nothing was done to take the case out of the operation of the statute of frauds, and secondly, the proposal or offer on 13th May, was to purchase the whole estate, but the guardian who was acting, as well for the heirs, as his ward, had not as yet obtained authority from all the heirs to make sale of their shares. It was yet contingent whether Nathaniel Carter, the son, one of the heirs, would concur in the proposed sale, and if he did not do so, the purchaser might for that cause properly refuse to carry into effect his offer to purchase.

Upon the whole matter the court are of opinion, that the administrator of the estate of Anna Carter has no legal right to demand of the defendant, or any of the heirs at law of her late husband, any portion of the sum received by them as the consideration for their conveyance of 9th June, of the estate that descended to them from their late father Nathaniel Carter

*Plaintiff nonsuit.*